IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) ) ) | |
| v. | ) ) | Criminal No. 5:14-cr-00244 |
| **DONALD L. BLANKENSHIP** | ) ) ) | |

### DEFENDANT DONALD L. BLANKENSHIP'S REPLY
### IN SUPPORT OF MOTION TO AMEND CONDITIONS OF RELEASE

The government contends that Defendant Donald L. Blankenship should continue to be subject to a condition of pretrial release prohibiting him from having any contact whatsoever with thousands of unnamed individuals—including family members and many longstanding personal friends who are unlikely witnesses—because Mr. Blankenship contributed financial support to a candidate for the West Virginia Supreme Court of Appeals a decade ago and because he more recently financed the production of a documentary. Opp'n at 4-5. In other words, the government argues that Mr. Blankenship's perfectly legal exercise of his First Amendment rights somehow demonstrates that he poses a safety risk warranting a sweeping restriction on personal contact. The government's position is without merit.

Mr. Blankenship's motion is simple and straightforward. Because Pretrial Services concluded that Mr. Blankenship poses no safety risk; because the government presented no contrary evidence during Mr. Blankenship's bond hearing; and because Judge VanDervort made no finding, under 18 U.S.C. §§ 3142(b) or (c), that Mr. Blankenship presents a safety risk, there is no basis in law or fact to impose a no-contact condition of pretrial release—let alone one as broad and onerous as the condition currently in place.

It therefore is irrelevant that, as the government points out, the Bail Reform Act of 1984 authorizes the Court in certain circumstances to require a defendant, as a condition of pretrial release, to avoid all contact with alleged victims or potential witnesses. 18 U.S.C. § 3142(c)(1)(B)(v). The Court may do so if—and only if—that condition is among the least restrictive to reasonably assure "*the safety of any other person and the community*." *Id.* § 3142(c)(1)(B) (emphasis added); *see also* LR Cr. P. 5.1(c)(5) (no-contact condition only may be imposed "for witness/victim protection where needed"). Because Mr. Blankenship has not been found to pose any safety risk, the Act does not authorize the imposition of a no-contact condition of release. That should not be "puzzling" to the government. Opp'n at 2. It is the law.

For the same reason, a no-contact condition of release also is unconstitutional under the circumstances. On this issue, *United States v. Arzberger*, 592 F. Supp. 2d 590, 603-04 (S.D.N.Y. 2008), is directly on point. As the government acknowledges, *see* Opp'n at 6, that case stands for the proposition that the Constitution requires a case-by-case determination of whether circumstances warrant a no-contact condition of pretrial release to reasonably assure public safety. The imposition of such a condition here, without any finding of safety risk warranting it, is precisely the sort of arbitrary imposition of a no-contact condition the court in *Arzberger* found to be unconstitutional. 592 F. Supp. 2d at 604.

The arguments the government advances for the first time in its opposition to suggest that Mr. Blankenship now should be considered a safety risk are utterly without merit.[1] Participating in the election process and financing a documentary—the latter during a period when the

---

[1] The government did not argue during Mr. Blankenship's bond hearing that Mr. Blankenship is a safety risk due to his past financial contributions to support a candidate for the West Virginia Supreme Court of Appeals or because he previously financed the production of a documentary concerning the tragic explosion at the Upper Big Branch-South mine ("UBB") on April 5, 2010. Judge VanDervort's imposition of the condition of release therefore was not in any way based on such arguments.

government had advised counsel that Mr. Blankenship was *not* the target of any investigation—are, as the government concedes, entirely *legal* activities. Opp'n at 5. Indeed, they are not even activities that would be prohibited today under the no-contact condition at issue. There is absolutely no basis to infer from Mr. Blankenship's past, perfectly lawful conduct that he presents a risk of obstructing justice in this case. None at all. Not surprisingly, the government cites no authority for this extraordinary proposition.

There likewise is no basis to infer such a risk because Mr. Blankenship "stands charged with serious offenses" and, according to the government, "thus has motive to interfere with witnesses." Opp'n at 3. The same accusations can be levied against each and every defendant facing felony charges. To "automatically" impose a no-contact restriction on that basis alone would be patently unconstitutional. *See Arzberger*, 592 F. Supp. 2d at 604. Mr. Blankenship is not charged with witness tampering, and the government does not—because it cannot—identify *any* potential witness that Mr. Blankenship has contacted for the purposes of influencing testimony. In fact, the government's own records plainly indicate that, during the four-year period immediately preceding the indictment, the government's central witness against Mr. Blankenship—former UBB Mining Group President Chris Blanchard—was in regular contact with Mr. Blankenship. And during that period, Mr. Blankenship neither discussed the investigation nor attempted to influence Mr. Blanchard's testimony. According to the FBI 302 of a recent government interview with Mr. Blanchard:

> BLANCHARD has communicated with DON BLANKENSHIP approximately once every three months since BLANKENSHIP left Massey Energy. … BLANCHARD thought that BLANKENSHIP ha[s] been deliberately cautious in avoiding discussion of the criminal investigation. … No one has tried to influence BLANCHARD's testimony in the criminal investigation.

FBI 302, Chris Blanchard, Dec. 3, 2014, at 1, 3. There is no basis in fact for the government's speculation about hypothetical witness tampering in the future.

Finally, Mr. Blankenship is not asking the Court to amend his conditions of pretrial release to—as the government puts it—gain "unfettered access to witnesses." Opp'n at 5. Directly to the contrary, we have proposed a reasonable, rationale alternative to the current restriction that would prohibit Mr. Blankenship from communicating with any person he knows to be a potential witness about the facts or substances of the charges against him, except through counsel. *See* Mot. at 4. Mr. Blankenship is respectfully asking the Court to lift or otherwise amend the current restriction principally because, as written, the condition adversely impacts his daily life on a recurring basis—in ways both big and small—and does so for no legitimate governmental purpose.[2] For example, the categories of individuals with whom Mr. Blankenship currently is to have no contact include several close and longstanding personal friends of both Mr. Blankenship and his family. Many of these individuals, as even the government would have to concede, are unlikely to be witnesses at trial. To prohibit Mr. Blankenship from maintaining these longtime friendships—as the current restriction does—serves no purpose other than to punish an individual constitutionally presumed to be innocent.

The government grossly mischaracterizes one of Mr. Blankenship's longstanding holiday traditions, which he would like to continue but must now largely abandon due to the overbroad no-contact condition, as an insidious plot to "begin sending gifts to potential witnesses" in order

---

[2] As indicated in the motion, the condition at issue requires Mr. Blankenship to:

> avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including: Specifically, the Defendant shall have *no direct or indirect contact with any person who was any [sic] officer, director, or employee of Massey Energy Co., or of any entity that provided contract services for Massey Energy Co. during the period of Jan. 1, 2008 through April 9, 2010*, except through counsel. The Defendant shall have no direct or indirect contact with any person who participated in any investigation of events at Massey Energy Company or the Upper Big Branch mine during the period from January 1, 2008 through April 9, 2010, except through counsel.

Order Setting Conditions of Release ¶ 7(g) (Dkt. No. 15) (emphasis added). The restriction indisputably includes thousands of unnamed individuals. There simply is no rational basis to presume all are, in fact, potential witnesses.

to "influence" their testimony. Opp'n at 8; *compare with* Mot. at 3 (noting that Mr. Blankenship must now forgo "sending simple holiday gifts he has sent for years").[3] The fact of the matter is that for the last 15-20 years, Mr. Blankenship has sent Greenbrier Peaches at Christmastime and Easter to roughly 50 individuals, including former directors of Massey Energy Company and other individuals he now is prohibited from contacting. For roughly the same period, he regularly has sent other simple holiday gifts to a long and ever changing list of people, including several mothers—some elderly and widows—of former Massey employees. It is hard to fathom how these actions possibly could be perceived as endangering public safety. Under the current no-contact condition, Mr. Blankenship must not only halt these "dangerous" traditions but also is prohibited from even contacting these individuals to explain why they no longer will not be receiving these small gestures. To give just one more example, on the day of this writing, Mr. Blankenship's counsel had to call several individuals, including Mr. Blankenship's nephew, to disinvite them from an annual holiday gathering at Mr. Blankenship's daughter's home.

\* \* \*

---

[3] The government goes so far to state that, if the Court were to narrow the current restriction in any respect, "it would be abdicating its duty to assure the safety of the community." Opp'n at 1.

Simply stated, Mr. Blankenship is not seeking amendment of his pretrial release conditions for the purpose of influencing witnesses, and there is no factual basis whatsoever to suggest otherwise. Because the condition of release at issue, as currently written, violates both the Bail Reform Act and the United States Constitution, Mr. Blankenship respectfully requests that the Court grant the motion.

Dated: December 11, 2014                                              Respectfully submitted,

                                                                                    /s/ William W. Taylor, III
William W. Taylor, III
Eric R. Delinsky
R. Miles Clark
Steven N. Herman
ZUCKERMAN SPAEDER LLP
1800 M Street, NW
Washington, DC 20036
202-778-1800 (phone)
202-841-8106 (fax)
wtaylor@zuckerman.com
edelinsky@zuckerman.com
mclark@zuckerman.com
sherman@zuckerman.com


  /s/ John H. Tinney, Jr.
John H. Tinney, Jr.
THE TINNEY LAW FIRM
P.O. Box 3752
Charleston, WV 55337-3752
304-720-3310 (phone)
304-720-3315 (fax)
jacktinney@tinneylawfirm.com

*Counsel for Donald L. Blankenship*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Defendant Donald L. Blankenship's Reply in Support of Motion to Amend Conditions of Release has been electronically filed and service has been made by virtue of such electronic filing this 11th day of December 2014 on:

R. Booth Goodwin, II
Steven R. Ruby
U.S. Attorney's Office
P.O. Box 1713
Charleston, WV 25326-1713

                                                  /s/ R. Miles Clark
                                                  R. Miles Clark