**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY**


UNITED STATES OF AMERICA


v.                                                    CRIMINAL NO. 5:14-00244


DONALD L. BLANKENSIHP


**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION NO. 4,
MOTION TO DISMISS FOR SELECTIVE AND VINDICTIVE PROSECUTION**

Comes now the United States of America by Steven R. Ruby, Assistant United States

Attorney for the Southern District of West Virginia, and submits this response to Defendant's

Motion No. 4, ECF No. 81, Motion to Dismiss for Selective and Vindictive Prosecution.

## I.      INTRODUCTION

Through Defendant's Motion No. 4, Defendant seeks dismissal of the Indictment, as well

as discovery, based on claims of selective and vindictive prosecution.  Specifically, Defendant

contends that he was charged in this case in retaliation for a self-produced video dubbed "Upper

Big Branch – Never Again," which was posted on the YouTube video-sharing ("the video")

website early last year.  ECF No. 82, at 1. Given the background of this case, the documented

history of criminality at Massey Energy Company ("Massey") under Defendant's leadership, and

the convictions, over several years, of several of Defendant's subordinates for conduct like that

charged here, the claim that Defendant was charged because of a YouTube video is incredible.

This prosecution was not brought in retaliation for Defendant exercising any legal right. Rather,

it was brought based on conclusive evidence of his crimes.  Defendant's motion should be denied

because he has failed to meet the demanding and rigorous standard necessary to overcome the

presumption of regularity and establish vindictive and selective prosecution or to authorize the discovery.

## II.  LEGAL STANDARDS

### A.  Prosecutorial Discretion and the Presumption of Regularity

In our criminal justice system, the United States retains "broad discretion" as to whom to prosecute.  *United States v. Goodwin*, 457 U.S. 368, 380 (1982).  Such latitude is afforded to federal prosecutors as delegates of the executive in aid of his constitutional responsibility to "take Care that the Laws be faithfully executed*.*"  U.S. Const., Art. II, §3; *see* 28 U.S.C. §§ 516, 547.  "It follows, as an incident of the constitutional separation of powers, that the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions."  *United States v. Cox*, 342 F.2d 167, 171 (5th Cir. 1965) (en banc).  "[J]udicial intrusion into prosecutorial decisions is justified only when the Constitution requires it."  *United States v. Olvis*, 97 F.3d 739, 743 (4th Cir. 1996) (quoting *United States v. Batchelder*, 442, U.S. 114, 125 (1979)); *see also Heckler v. Chaney*, 470 U.S. 821, 832 (1985).  "So long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."  *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).

The broad discretion vested in prosecutors is based, in part, on the reality that prosecutorial decisions are particularly ill-suited for judicial review.  "Such factors as the strength of the case, the prosecution's general deterrent value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake."  *Wayte v.*

*United States*, 470 U.S. 598, 608 (1985).  Accordingly, a strong presumption of regularity cloaks prosecutorial charging decisions.  *United States v. Armstrong,* 517 U.S. 456, 465 (1996); *United States v. Chemical Found., Inc.*,  272 U.S. 1, 14-15 (1926).

The prosecutorial discretion of the United States is limited only by the Due Process Clause of the Fifth Amendment, which prohibits the government from prosecuting a defendant because of specific animus on the part of the prosecutor or to punish the defendant for exercising a legally protected statutory or constitutional right.  *Goodwin*, 457 U.S. at 372.

### B.  Vindictive Prosecution

A defendant may show prosecutorial vindictiveness by establishing actual vindictiveness, or by creating a presumption of vindictiveness.  To establish actual vindictiveness, a defendant must show, "through objective evidence that (1) the prosecutor acted with genuine animus toward the defendant and; (2) the defendant would not have been prosecuted but for that animus." *United States v. Jackson*, 327 F.3d 273, 294 (4th Cir. 2003).  If the defendant is unable to prove an improper motive with direct evidence, he may present evidence of circumstances from which an improper vindictive motive may be presumed.  *Id.*  However, to invoke such a presumption of vindictiveness, a defendant must show that the circumstances "pose a realistic likelihood of vindictiveness." *Bleckledge v. Perry*, 417 U.S. 21, 27 (1974).  Such a presumption is proper only when circumstances warrant it for all cases of the type presented.  *Goodwin*, 457 at 381.  Because the presumption of vindictiveness must be applicable to all cases presenting the same circumstances, it will rarely, if ever, be applied to prosecutors' pretrial decisions.  *Id.*

The Supreme Court has applied a rebuttable presumption of vindictiveness in two narrowly circumscribed situations, both of which occurred in a post-trial setting.  *See North Carolina v. Pearce*, 395 U.S. 711 (1969) (rebuttable presumption is raised where more severe

sentence is imposed on a defendant following a successful appeal and retrial); *Blackledge v. Perry*, 417 U.S. 21 (1974) (rebuttable presumption is raised when a defendant is charged with a more serious offense following invocation of appeal rights). Defendant has not cited, and the United States has not identified a single case in which the presumption of vindictiveness has been applied in a pre-trial setting.

## C. Selective Prosecution

The burden for supporting a claim of selective prosecution is equally onerous. The requirements for such a claim are drawn from "ordinary equal protection standards," which mandate that the decision to prosecute a particular criminal case may not be based upon an "unjustifiable" factor such as race, religion, or another arbitrary classification. *Armstrong,* 517 U.S. 464-65. A prosecution also cannot be motivated by a defendant's exercise of constitutional rights. *United States v. Hastings*, 126 F.3d 310, 313 (4th Cir. 1997). However, absent a substantial showing to the contrary, prosecutions will be presumed to be motivated solely by proper considerations. *Id.*

To overcome the presumption of regularity in a claim of selective prosecution, a defendant must demonstrate with clear evidence that the federal prosecution policy "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Id.* This requires a defendant to establish both (1) that similarly situated individuals were not prosecuted, *Armstrong*, 517 U.S. at 465; and (2) that the decision to prosecute was "invidious or in bad faith." *United States v. Greenwood*, 796 F.2d 49, 52 (4th Cir. 1986). "The standard is intended to be a 'demanding' and 'rigorous' one" to protect a core executive function and the presumption of regularity. *Olvis*, 97 F.3d at 743 (quoting *Armstrong*, 517 U.S. at 465).

### D. Discovery

Just as the standard for ultimately proving a vindictive or selective prosecution claim is a rigorous one, so too is the evidentiary threshold for obtaining discovery to support such a claim. *Olvis*, 97 F.3d at 743 (quoting *Armstrong*, at 468). The "showing necessary to obtain discovery should be a significant barrier to the litigation of insubstantial claims." *Armstrong*, 517 U.S. at 464.

To surmount this barrier, a defendant must advance objective evidence making a credible showing of vindictive animus and discriminatory effect and intent. *United States v. Wilson*, 262 F.3d 305, 315 (4th Cir. 2001) (selective prosecution); *United States v. Armstrong*, 517 U.S. at 463-64 (vindictive prosecution). The standard is a rigorous one because discovery imposes significant costs, diverts government resources, and discloses prosecutorial strategies. *Wilson*, 262 F.3d at 315 (quoting *United States v. Olvis*, 97 F.3d 739, 743 (4th Cir. 1996)).

### E. Touhy Regulations

Federal regulations govern when, and under what circumstances, a federal employee may be compelled to testify or produce evidence obtained during the course of their federal employment. *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). These regulations, commonly referred to as "Touhy" regulations, are issued under the authority of the Federal Housekeeping Statute, 5 U.S.C. § 301, which was originally enacted in 1789, to aid President Washington in his organization of the executive departments. 1 Stat. 71 (1789); *See Chrysler Corp. v. Brown*, 441 U.S. 281 (1979).

The validity of Touhy regulations and a litigant's obligation to comply with them has been consistently upheld, even in the context of a federal criminal trial. *See United States v. Guild*, 341 F. App'x. 879 (4th Cir. 2009) (defendant's failure to comply with Department of

Justice Touhy regulations justified the exclusion of evidence); *United States v. Soriano-Jarquin*, 492 F.3d 495 (4th Cir. 2007) (defendant's failure to comply with Department of Homeland Security Touhy regulations warranted exclusion of trial testimony in federal criminal trial); *United States v. Wallace*, 32 F.3d 921 (5th Cir. 1994) (Department of Justice Touhy regulations found valid and mandatory and defendant's failure to comply justified quashing subpoena to federal agent in federal criminal trial); *United States v. Allen*, 554 F. 2d 398, 406 (10th Cir. 1977) (Department of Justice Touhy regulations found valid and mandatory and defendant's failure to comply justified the quashing of subpoena to United States Attorney in a federal criminal trial) .

Defendant's motion for discovery implicates the Department of Justice regulations found at 28 C.F.R. §§ 16.21-29. The regulations prohibit current and former Department of Justice employees from testifying or producing information obtained in the course of their employment absent departmental authorization. *Soriano-Jarquin*, 492 F.2d at 504. In the absence of departmental authorization, the employee must respectfully decline to comply even when faced with a court order directing disclosure. 28 C.F.R. § 16.28.

The regulations require an applicant to make a formal request for testimony or for the production of documents. 28 C.F.R. § 16.23(c). The request must be accompanied by an affidavit or statement by the party seeking the testimony, setting forth a summary of the testimony sought. *Id.* The Department reviews the request pursuant to the considerations set forth in 28 C.F.R. § 16.26, and determines whether the testimony or disclosure sought should be authorized.

Upon a determination that it would not be appropriate to authorize testimony or disclose the information demanded, even if a court were to require it, no Department attorney responding to the demand is permitted to make any representation that implies that the Department would, in

fact, comply with the demand if directed to do so by a court. 28 C.F.R. § 16.24(f). If it is determined that the request is inappropriate, and attempts to limit the scope or obtain the withdrawal of the request are unsuccessful, the matter must be referred to the Deputy Attorney General for final consideration. 28 C.F.R. §16.24(f); 16.25(b).

In this case, Defendant's request for discovery implicates at least the first of the regulation considerations, i.e., the requested disclosure is inappropriate under the rules of criminal procedure; and the requested disclosure is in appropriate insofar as it clearly seeks information protected by privilege and the work product doctrine. 28 U.S.C. §16.26(a)(1-2). Accordingly, the discovery sought by Defendant may not be authorized even if his motion is granted.

### III.    DISCUSSION

#### A.  <u>The Prosecution was Brought for a Valid Law Enforcement Purpose</u>

Both the presumption of regularity and the public record weigh against Defendant's claims of vindictive and selective prosecution. The indictment in this case results from a long and considered investigation through which substantial evidence of Defendant's crimes was developed and a "singular prosecutorial profile" emerged. *United States v. Hendrick*, No. 1:96CF87, Slip. Op. (W.D.N.C. May 19, 1997) (citing *United States v. Olvis*, 97 F.3d at 744) (copy attached as Ex. A).

As conceded by Defendant, the United States initiated a criminal investigation immediately following the explosion at the Upper Big Branch mine (UBB). Through the course of the investigation, the United States amassed, reviewed and analyzed documents, interviewed witnesses, and pursued a series of prosecutions of former employees, methodically working its

way through the organizational structure.  The evidence developed through the investigation and prosecutions led inexorably to Defendant and the charges set forth in the Indictment.

The following prosecutions are on the public record:

*United States v. Hughie Elbert Stover*  - Following a jury trial in 2011, Stover, the former Massey Security Chief at UBB, was convicted of lying to government investigators about Massey's illegal practice of warning underground workers when safety inspectors arrived at its mines, and of obstructing justice by attempting to destroy evidence of the security procedures at UBB.  Stover was sentenced to three years' imprisonment.

*United States v. Gary May* - May pleaded guilty in 2012 to a felony count of conspiring to thwart mine safety inspectors.  May, a former Massey Superintendent at UBB, admitted that he conspired with others to put coal production ahead of mine safety and conceal safety hazards and violations at UBB on numerous occasions.  Among other things, May admitted that he caused a methane monitor to be disabled less than two months before the deadly UBB explosion. He also admitted that he ordered the falsification of mine inspection records by omitting safety violations and hazardous conditions at UBB – including the presence of high water that could endanger workers.  May was sentenced to 21 months' imprisonment.  May cooperated in the ongoing investigation and testified at Stover's sentencing hearing.

*United States v. David Hughart*  - Hughart, a longtime Massey official, was sentenced to 42 months' imprisonment following a February 2013 guilty plea to conspiracy to impede MSHA and conspiracy to defraud the United States through the violation of mandatory mine safety and health standards.  Hughart admitted to authorizing and ordering violations of ventilation standards and coal-dust limits meant to prevent explosions.  Hughart cooperated in the ongoing investigation, and during his guilty plea, publicly implicated Defendant in the conspiracy.   The

charges brought against Hughart are similar to the charges brought against Defendant in Counts One and Two of the Indictment.

Even before the UBB explosion, the United States had a long law enforcement history against Massey subsidiaries and employees for mine safety violations, some of which resulted in death. In 2006, the United States charged White Buck Coal Company (White Buck), a Massey subsidiary, with making false statements and committing willful violations of mandatory mine safety and health standards from as far back as 2002. White Buck and two mid-level managers, a shift foreman and belt foreman, pleaded guilty, admitting that they had failed to perform mandatory pre-shift inspections.

In 2008, the United States charged Aracoma Coal Company (Aracoma), another Massey subsidiary, with ten mine safety crimes. Aracoma pleaded guilty to willful mine safety violations resulting in the death of two miners. A belt fire at Aracoma in 2006 killed the miners who were unable to get away when thick smoke entered what was supposed to be a sealed escape route. As part of the plea agreement, Aracoma admitted that its employees had removed two permanent ventilation controls from the mine and failed to replace them or provide additional controls in the primary escape route. The mine was also found to have inadequate water pressure, insufficient water hoses, sprinklers, or fire alarms, all of which contributed to the miners' deaths. In the largest settlement of its kind at the time, Aracoma paid a $2.5 million criminal fine and an additional $1.7 million in civil penalties. Five of Aracoma's mid-level managers also pleaded guilty to mine-safety crimes.

In 2011, after the deadly explosion at UBB, Thomas Harrah, a former UBB employee, pleaded guilty to two felonies: faking a foreman's license during mine safety inspections and

lying to inspectors. Harrah was transferred from UBB to another Massey mine eight months before the UBB explosion. Harrah was sentenced to ten months' imprisonment.

All of these cases were prosecuted on Defendant's watch. They establish a longstanding history of prosecution by this United States Attorney's Office (including prosecutions before the tenure of the current United States Attorney) of mandatory mine safety and health violations at the company that Defendant operated.

### B. Defendant's Claims are Insufficient to Establish a Vindictive Prosecution

Defendant claims that the evidence supports both a presumption of vindictiveness and actual vindictiveness. As set forth below, Defendant fails to meet the standard for either claim.

### 1. Defendant Presents No Evidence to Support a Presumption of Vindictiveness

Defendant argues that the Government's failure to provide him notice of the impending Indictment combined with the "baseless charges" that were brought against him and no one else creates a realistic likelihood of an improper vindictive motive. He invokes the presumption of vindictiveness and asserts that the burden should shift to the United States "to present objective evidence justifying its conduct." ECF No. 82, at 27.

Defendant has not cited, nor has the United States identified a single case in which the presumption of vindictiveness has been applied in such a pre-trial setting. Defendant cites *United States v. Goodwin*, 457 U.S. 368 (1982), a case in which the court declined to apply the presumption. In *Goodwin*, the Supreme Court considered a case wherein the prosecutor made a pre-trial decision to modify the charges against a defendant. The defendant claimed that the impermissible appearance of retaliation arose when the prosecutor obtained a four-count felony indictment after the defendant requested a jury trial on misdemeanor charges arising from the same incident. The Supreme Court found no evidence of vindictiveness, actual or presumed, and

cautioned against application of the presumption in the pretrial setting. "There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in the pretrial setting," *Id.* at 381. "A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution." *Id.* at 382.

Defendant's reliance on *Blackledge v. Perry*, 417 U.S. 21 (1974), is likewise misplaced. *Blackledge* involved a case of prosecutorial vindictiveness in a post-trial setting where a defendant who was convicted of a misdemeanor, invoked his right to a trial de novo in a superior court. After the defendant noticed the appeal, but before the trial de novo, the prosecutor brought a more serious charge arising from the same conduct. The court held it was not constitutionally permissible for the prosecution to respond to a statutory right to appeal by bringing a more serious charge, and that a presumption of vindictiveness was permissible in this context. *Id.* at 28-29. The court's ruling reflected a concern that prosecutors could discourage appeals by "upping the ante" for the conduct underlying the challenged conviction. *Id.* at 27-28. *Blackledge* is clearly distinguishable from this case because no such concern arises in this pre-trial setting.

Accordingly, Defendant has cited no legal authority supporting application of a presumption of vindictiveness to the case at bar. However, even if the presumption were to apply in this pre-trial setting, it is readily rebutted by the public record and objective evidence justifying the Indictment.

Defendant's additional allegations regarding pre-indictment notice and the "baseless charges" contained in the Indictment are addressed further below, and in response to separate motions. (*See* Responses of the United States to Defendant's motions 5-15) ECF Nos. 83-104.

## 2. Defendant Presents No Evidence to Support Actual Vindictiveness

In the event that the court fails to adopt Defendant's invocation of the presumption of vindictiveness, he poses an alternative theory that the prosecutors in this case "acted with actual animus" in bringing the Indictment. In support, Defendant argues (1) he did not receive pre-indictment notification from the prosecution that he was a target; (2) the charges against him are not straightforward; (3) the alleged animus of others should be imputed to the prosecutors; and (4) the timing of the Indictment establishes that it was brought in retaliation for the video.

As set forth below, Defendant has presented no clear or objective evidence that the prosecutors in this case acted with vindictive animus, in bad faith or with discriminatory purpose or effect.

## 3. Pre-Indictment Notification

Defendant asserts that he was entitled to advance notice of the impending Indictment so that he could attempt to circumvent its timely return. He is simply incorrect.

The United States Attorney's Manual (USAM), Section 9-11.153 (Notification of Targets) encourages prosecutors "in appropriate cases" to notify targets of an investigation a reasonable time before seeking an indictment "in order to afford them the opportunity to testify before the grand jury." *Id.* This provision is, by its own terms, not mandatory and, in fact, sets forth circumstances in which such notification would be inappropriate, including when "such action might jeopardize the investigation or prosecution because of the likelihood of flight, destruction or fabrication of evidence, endangerment of other witnesses, undue delay or otherwise would be inconsistent with the ends of justice." *Id.*

In fact, many or most defendants in this district and elsewhere are charged with no prior notice that they are being prosecuted, precisely because of the considerations that the USAM

recognizes weigh against such prior notice—risks of flight and destruction or fabrication of evidence, witness-related concerns, and so on. As in many of its prosecutions, the United States concluded here that the risks of prior notification outweighed any possible benefit to the case. The Magistrate Judge's subsequent findings regarding the flight risk posed by Defendant, based upon Defendant's own disclosures to the pretrial services officer, suggest that the United States' decision was a prudent one.

Notably, the USAM is, by its own express terms, nothing more than a "quick and ready reference" for federal prosecutors and provides only internal Department of Justice guidance. USAM 1-1.100 (Purpose). "It is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal. Nor are any limitations hereby placed on otherwise lawful litigative prerogatives of the Department of Justice." *Id.* Nonetheless, Defendant asserts that the decision not to provide the notice "encouraged" by the USAM—which is not provided in many, if not most cases—establishes actual vindictiveness.

Defendant does not complain that the lack of pre-indictment notice deprived him of the opportunity to appear and testify before the grand jury, nor does he suggest that he would have testified if notice had been provided. Rather, Defendant argues that he was "denied the opportunity to seek pre-indictment review from the Department of Justice" admittedly, in an attempt to forestall or prevent the indictment. ECF No. 82, at 14. Though it may be counsel's practice and preference to seek Departmental review of impending charges, Defendant is clearly not entitled to such a process. The absence of pre-indictment notice is entirely commonplace, and it certainly does not establish clear or objective evidence of improper animus against this particular Defendant.

### 4. **The Indictment Fairly and Accurately Sets forth the Charges Against Defendant**

Defendant complains that the charges against him are contrived, are based on weak and indefensible legal theories, and are anything but a straightforward application of the law to the facts. ECF No. 82, at 1, 8, 29. The sufficiency of the Indictment is addressed more fully in the United States' responses to Defendant's motions six through fifteen (ECF Nos. 85-104), and Defendant's particular argument regarding the conduct of the United States in the grand jury is addressed in the response to motion five. ECF Nos. 83-84.

In short, the longstanding rule of law that "courts may not 'look behind' grand jury indictments if 'returned by a legally constituted grand jury' is the touchstone for any inquiry into the legality of indictments." *United States v. Mills*, 995 F.2d 480, 487 (4th Cir. 1993) (quoting *Costello v. United States*, 350 U.S. 359, 363 (1956)). If an indictment is valid on its face, that is sufficient "to call for a trial of the charge on its merits." *Costello*, 350 U.S. at 363.

### 5. **The Alleged Animus of Others May Not Be Imputed to the Prosecutors**

Because Defendant is unable to present clear or objective evidence of improper animus on the part of prosecutors, he attempts to impute the purported animus of others to those who made the charging decisions in this case. Such imputation is improper.

Defendant devotes much of his motion to outlining his self-asserted divisive political activism and strained relationships with both individuals and entities, real and imagined. Among his adversaries, he identifies Senator Joseph Manchin III, UMWA President Cecil Roberts, MSHA Administrator Joe Main, former MSHA Administrator J. Davitt McAteer, MSHA and a nebulous creation of his imagination, the "West Virginia Democratic establishment."[1] However,

---

1 Defendant's attempts to draw connections between his adversaries and the prosecutors in this case are so beyond attenuated that they stretch credulity.

because none of these individuals or entities, real or imagined, was responsible for the charging decisions in this case, their animus toward Defendant, actual or perceived, may not be imputed to the prosecutors.

It is well-established that vindictive animus or bad faith of others may not be imputed to officials charged with prosecutorial decisions. The Court of Appeals for the Fourth Circuit conclusively ruled on this issue in *United States v. Hastings*, 126 F.3d 310 (4th Cir. 1997). Hastings, a prominent businessperson and the head of the local Republican Party, was indicted for failing to file tax returns. He sought to have the indictment dismissed and requested discovery on claims of vindictive and selective prosecution, asserting that he had been targeted because of his political party affiliation and prominent status in the community. The district court granted Hastings' request for discovery, and when the prosecution failed to fully comply, dismissed the indictment. The Government appealed. On appeal, the court considered two theories offered by Hastings in support of his claim that the prosecution was improperly motivated by discriminatory intent and unconstitutional animus. First, Hastings asserted that he was targeted for investigation because he was a Republican and an ally of other Republican politicians. Second, Hastings claimed that his business success and public renown were improperly considered when deciding whether he should be prosecuted. The court rejected both arguments.

In the first instance, the court found no evidence of political animus on the part of the investigators who conducted the tax investigations and referred the case for prosecution. More importantly, the Court found that even if the investigators had improper animus, there was no evidence "that the government official who actually made the decision to prosecute the case was motivated by impermissible considerations." *Id*. at 314. The court concluded, "We will not impute unlawful biases of the investigating agents to the persons ultimately responsible for the

prosecution." *Id.*  In reaching this decision, the court relied on *United States v. Monsoor*, 77 F.3d 1031, 1035 (7th Cir. 1996), holding that the animus of a referring agency is not, without more, imputed to federal prosecutors, and *United States v. Goulding*, 26 F.3d 656, 662 (7th Cir. 1994), finding that the only relevant bias is that of the individuals who actually make the decision to prosecute.

In this district, a recent decision implementing this no-imputation principle is *United States v. Ford*, 835 F. Supp. 2d 137 (S.D. W. Va. Dec. 12, 2011), which rejected a defendant's request to impute an investigator's supposed animus to the prosecutor who made the charging decision. The *Ford* opinion incisively applied the law pertinent to claims of selective and vindictive prosecution, and it bears reading in its entirety. *See also United States v. Koh*, 199 F.3d 632 (2d Cir. 1999), *cert. denied*, 530 U.S. 1222 (2000) (animus of former AUSA who was receiver for crime victim and brought criminal conduct to prosecutor's attention was not imputed to federal prosecutor); *United States v. Gallegos – Curiel*, 681 F.2d 1164, 1168 (9th Cir. 1982) (animus of state prosecutor was not imputed to federal prosecutors).

These well-established principles apply equally here.  Accordingly, even if, as Defendant asserts, he has antagonized many and has an extensive list of enemies, that purported animus is not imputable to the "government official who actually made the decision to prosecute this case." *Hastings*, 126 F.3d at 314.

The Court of Appeals also disposed of Hastings' second claim, that the prosecutors had given improper consideration to his "prominence in the community." *Id.*  The Court, relying on persuasive precedent from the First, Seventh and Eighth Circuits, found that "a person's public renown may be properly considered among other factors when deciding whether to pursue criminal sanctions for a violation of law." *Id.; See also United States v. Saade*, 652 F.2d 1126,

1136 n.14 (1st Cir. 1981), (the increased deterrent effect of prosecution of prominent figures is a legitimate consideration in favor of prosecution); *United States v. Peskin*, 527 F.2d 71, 86 (7th Cir. 1975); *United States v. Catlett*, 584 F.2d 864, 868 (8th Cir. 1978); *United States v. Ojala*, 544 F.2d 940, 944-45 (8th Cir. 1976).

Defendant cannot find support for his claims of vindictive prosecution or selective prosecution based on his notorious reputation or public renown.

### 6. The Indictment is Unrelated to the Release of the Video

Defendant argues that the timing of the Indictment establishes actual vindictiveness because it was hastily brought in retaliation for the video, in which he claims to have "excoriated the federal government" and accused MSHA of being negligent, wrong about the cause of the UBB explosion, and standing in the way of mine safety. ECF No. 82, at 1. Defendant's position is untenable and belied by the facts.

First, the Indictment was returned after an extended investigation and multiple prosecutions of Defendant's subordinates, and some seven months after the posting of the video. This can hardly be considered hasty or proximate to the video's release. Second, neither United States Attorney Goodwin nor Assistant United States Attorney Ruby have viewed the video, and they have no more than a general idea of its subject matter. Though Defendant claims the video was critical of MSHA, he does not assert that the United States Attorney or his office was criticized in the video, or even mentioned. And third, the "onerous conditions of release" sought by the United States, and about which reference to the video was made by the United States, are no more than standard terms established by Local Rule of Criminal Procedure 5.1, including limiting travel and prohibiting contact with any potential witness in the case, except through counsel. In this instance, Defendant is apparently offended by being treated in the same manner

as those who are similarly situated, i.e., others charged with crimes in this district. None of the circumstances identified by Defendant establish any connection between the release of the video and the return of the Indictment many months later.

Defendant also argues that the timing of the Indictment establishes a clear attempt to silence him. Defendant asserts, "the indictment had its intended effect . . . . The threat of criminal conviction and imprisonment, combined with the gag order, has now successfully silenced him." ECF No. 82, at 2, 14. These arguments are at best disingenuous.

The Court, not the United States, imposed both the restriction on contacting witnesses, and the "gag order" about which he complains. Moreover, his complaint about the Court's order restricting public comment appears inconsistent with his previous representation in the hearing on that order that it should remain in effect during the pendency of these proceedings. Defendant contradicts himself. Furthermore, and most important, Defendant has made little attempt to comply with the order, in that his blog, www.donblankenship.com, and his videos[2] remain publicly available on the internet. The Indictment was not brought to silence Defendant, and has clearly not had that effect. Defendant has not been silenced.

Defendant has proffered no clear or objective evidence that the timing of the Indictment was connected to the release of the video, and no such evidence exists. The claim is fanciful, to put it politely.

### C. Defendant's Claims are Insufficient to Establish Selective Prosecution

In support of his claim of selective prosecution, Defendant rehashes many of the arguments made in other motions and in his claim of vindictive prosecution. Accordingly, the United States will not duplicate its responses here, except to say that none of the circumstances

---

2 Defendant claims in his motion to have made a second video, which, like the first, has not been viewed by either the U.S. Attorney or AUSA Ruby.

set forth above overcome the presumption of prosecutorial regularity or the meet the burden of establishing a discriminatory purpose or discriminatory effect. To succeed, Defendant must establish both.

Defendant does, however raise one additional argument in support of his claim of selective prosecution. Defendant alleges that he has been singled out for prosecution and that the Indictment is so contrived that it demonstrates improper animus. With regard to Counts One and Two of the Indictment (the mine safety counts), Defendant asserts: (1) that "tens if not hundreds" of corporate executives in the industry operate mines with similar safety records; (2) the United States has not indicted miners and lower-level management as co-conspirators and; (3) he "stands alone among chief executives in the industry in being prosecuted." ECF No. 82, at 15-17. Defendant makes similar arguments with regard to Counts Three and Four of the Indictment (the securities counts) asserting that despite similar safety records of other companies, "no one – no executive and no corporate entity – has ever been charged for securities fraud based on such statements." ECF No. 82, at 19.

The United States has no evidence, however, of conduct in this district by other executives that parallels that of Defendant. If Defendant possesses such evidence, the United States hopes that he will turn it over for further investigation.

Regarding this Defendant, investigation has disclosed, as alleged in the Indictment, that he micromanaged his mines to an unusual degree, demanding to personally review constant, sometimes half-hourly, production reports and personally supervising even the most obscure and minute details of mining operations. Through this process, Defendant inserted himself deeply into what would normally be considered the day-to-day responsibilities of the lower-level managers that he now wishes were charged with his crimes. In doing so, Defendant situated

himself differently than most other executives. Though Defendant would clearly prefer to have others in lesser positions, including miners and lower-level management, suffer the consequences of his direct actions (as they perhaps have in the past), in this case the evidence led to the top of the organization and to the charges set forth in the Indictment.

The "Memorandum and Order" in the case of *United States v. Hendrick*, No. 1:96CR87, Slip op. (W.D.N.C. May 19, 1997) (copy attached as Ex. A), relied upon by the Fourth Circuit in *United States v. Hastings*, 126 F. 3d at 314, is particularly instructive here. The defendants in *Hendrick* filed a motion to dismiss the indictment for selective and vindictive prosecution, attempting to impute the animus of another to the U.S. Attorney in the case. In the alternative, the defendants asked for discovery on the issue. Acting pursuant to a referral order under 28 U.S.C. § 636, the magistrate judge granted limited discovery. The district court, however, reversed the discovery order.

The district court found that the defendants had failed to surmount the "significant barrier" to discovery, falling "short of making the required showing of a discriminatory effect." *Hendrick*, at 4. Like Defendant, the *Hendrick* defendants supported their claim for vindictive and selective prosecution by arguing that "many" others were involved in the same corrupt schemes as they had been, but were not prosecuted. *Id.* at 4-5. Upon review of their claims, the district court found that the defendants had "produced no evidence amounting to a credible showing that 'similarly situated' individuals could have been prosecuted by the U.S. Attorney for the W.D.N.C. On the contrary, all available evidence indicates the [defendants] presented a singular 'prosecutorial profile'" that made their situation different from others who had allegedly engaged in corrupt schemes in and out of the district. *Id.* The court further found that based on the evidence, increased law enforcement scrutiny was justified in the case of the defendants,

"due to their having 'projected significantly different prosecutorial profiles.'" *Id.* at 5 (citing *United States v. Olvis*, 97 F.3d at 744).

The court noted that an article in the *New York Times*, made clear that the defendants were "high-profile citizens involved in high-profile activities" in the district. The court went on to find that had the U.S. Attorney failed to examine their conduct following the publication of the article which detailed alleged criminal wrongdoing, "he would have seriously undermined the public's confidence that, in this District, federal law applies to both the mighty and the meek." *Id.* at 6. The explicit national publicity detailing the defendants' wrongdoing gave the defendants "a unique prosecutorial profile" not just in the district, but nationwide. *Id.* Relying on *Wayte*, 470 U.S. at 607, the Court made the following finding:

> Given the complexity and scale of the subject matter, judicial prying into the mechanics of executive decision-making would, in the present case, appear particularly inappropriate. For it is precisely where the Government is investigating a sophisticated, nationwide criminal enterprise, that the "strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake.

*Id.* at 7. The Court went further, "Indeed, in complex cases in particular '[m]aking decisions based on the myriad of potentially relevant factors and their permutations require[s] the very professional judgment that is conferred upon and expected from prosecutors in discharging their responsibilities.'" *Id.* (citing *Olvis*, 97 F.3d at 744). The Court concluded that given the scope of the scheme and the defendants' "alleged significant role in it," the defendants "presented a markedly different prosecutorial profile" than others that they claimed were similarly situated. *Id.* at 8.

After declining to impute the alleged animus of another prosecutor to the one who brought the indictment, the court vacated the magistrate judge's order for discovery, holding that the defendants had failed to produce evidence of discriminatory purpose or effect.  *Id.* at 10.

The arguments of Defendant in this motion are nearly identical to those addressed by the district court in *Hendrick*.  As in *Hendrick*, the United States is not aware of another coal CEO under whose management there has been such a proven record of willful misconduct and of whom it can be shown was so intimately involved in the operations of the company.  The evidence in this case presents a "singular prosecutorial profile" for Defendant, and distinguishes him from those he claims are similarly situated.

As the court articulately stated in *Hendricks*, Defendant is a "high profile citizen involved in high profile activities" in the Southern District of West Virginia.  *Id*. at 6. Had the United States Attorney failed to examine Defendant's conduct following the deadly explosion at UBB and the evidence of willful, illegal safety violations that subsequently emerged, "he would have seriously undermined the public's confidence that, in this District, federal law applies to both the mighty and the meek." *Id.*

Given Defendant's singular prosecutorial profile, he cannot establish that his prosecution was motivated by anything other than proper considerations.

## IV.    CONCLUSION

Defendant has failed to overcome the presumption of regularity and establish by clear and objective evidence that the Indictment in his case was brought with improper animus or with discriminatory purpose or effect.  It is clear that the Indictment stems from a lengthy and

progressive investigation that led to the top of the Massey organization. Defendant's motion for dismissal of the Indictment, and his motion for discovery should be denied.

Respectfully submitted,

R. BOOTH GOODWIN II
United States Attorney


/s/ Steven R. Ruby
Steven R. Ruby
Assistant United States Attorney
WV Bar No. 10752
300 Virginia Street, East
Room 4000
Charleston, WV 25301
Telephone: 304-345-2200
Fax: 304-347-5104
Email: steven.ruby@usdoj.gov

## CERTIFICATE OF SERVICE

It is hereby certified that the foregoing "United States' Response to Defendant's Motion No. 4, Motion to Dismiss for Selective and Vindictive Prosecution" has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing this 20th day of February, 2015 to:

William W. Taylor, III
Blair G. Brown
Eric R. Delinsky
R. Miles Clark
Steven N. Herman
Zuckerman Spaeder LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036

James A. Walls
Spilman Thomas & Battle, PLLC
48 Donley Street, Suite 800
P.O. Box 615
Morgantown, WV  26501

Alexander Macia
Spilman Thomas & Battle, PLLC
P.O. Box 273
Charleston, WV  25321

/s/ Steven R. Ruby
Steven R. Ruby
Assistant United States Attorney
WV Bar No. 10752
300 Virginia Street, East
Room 4000
Charleston, WV 25301
Telephone:  304-345-2200
Fax: 304-347-5104
Email: steven.ruby@usdoj.gov