IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 5:14-cr-00244 |
| ) | |
| DONALD L. BLANKENSHIP ) | |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO
CONTINUE THE TRIAL DATE AND MODIFY THE SCHEDULING ORDER**

The government's opposition to Mr. Blankenship's request for a reasonable trial date reveals how far it has strayed from the admonition that a prosecutor's job is not to win at all costs but instead to do justice. Despite taking more than four and a half years to bring this case, the government argues that Mr. Blankenship should be allowed only five months to prepare his defense. The government turns for support to a regrettable time and place in our nation's history and argues that it is permissible to deny a defense request for a continuance, try a man for murder, and sentence him to death three days after his arrest. *See* United States' Resp. to Def.'s to Mot. to Continue Trial and Modify Scheduling Order ("Opp'n") at 4 (discussing *Avery v. Alabama*, 308 U.S. 444 (1940)). It asserts that this Court should use the standards for post-conviction petitions alleging ineffective assistance of counsel in deciding a pretrial motion to continue a trial date. *Id*. at 3-4 (discussing *Morris v. Slappy*, 461 U.S. 1 (1983) and *United States v. Cronic*, 466 U.S. 648 (1984)). It cherry picks appellate decisions from three circuits applying a deferential post-trial abuse of discretion standard to affirm the convictions of defendants who wanted continuances of their trials. *Id*. at 4-5. It miscasts Mr. Blankenship's motion as one for reconsideration, *id*. at 5-6, when the request instead specifically describes work that the defense

has done after the court's earlier order and the enormous amount that remains to be done to prepare for trial.

None of these arguments by the government have anything to do with "the ends of justice," the focal point for the court's decision on the motion to continue the trial date. *See* 18 U.S.C. § 3161(h)(7)(A). Applying the proper legal standards, rather than those invoked by the government, Mr. Blankenship has shown good cause to continue the trial date: the defense cannot be ready for trial in April 2015 due to the extraordinary volume of discovery, the number of potential witnesses, the breadth and complexity of the charges, and the large number of pending significant undecided pretrial motions. *See* 18 U.S.C. § 3161(h)(7)(B). Given those facts, it is "unreasonable to expect adequate preparation for . . . the trial," 18 U.S.C. § 3161(h)(7)(B)(ii), by April 2015, and the failure to grant a continuance "would deny counsel for the defendant . . . the reasonable time necessary for effective preparation," 18 U.S.C. § 3161(h)(7)(B)(iv). Forcing Mr. Blankenship to trial in April 2015 or on any date close to it also would deprive Mr. Blankenship of his Fifth and Sixth Amendment rights to a fair trial and the effective assistance of counsel and would "result in a miscarriage of justice." 18 U.S.C. § 3161(h)(7)(B)(i).[1]

### Defense Counsel Need Additional Time
### To Review and Use the Documents Produced in Discovery

The government's opposition does not dispute that every one of the 651,000 documents it produced under Rule 16 must be individually reviewed. Every document must be reviewed because each is potentially material to the preparation of the defense or is intended for use in the government's case-in-chief at trial and because the government has reserved the right to use at

---

[1] Mr. Blankenship waives his Speedy Trial Act rights for the period of any continuance granted by the Court in response to this motion.

trial each document and the information contained in each document. Def.'s Mem. in Supp. of Mot. to Continue the Trial Date and Modify the Scheduling Order ("Mem.") at 6.

The government's opposition does not provide any evidence to rebut defense counsel's substantive analysis regarding the length of time it will take to review each of the 651,000 documents produced in discovery. The defense analysis is based not on conjecture but on evidence of the pace of review to date and prevailing professional standards and practices detailed in an expert affidavit. Mem. at 5-8.

The government speculates that less relevant categories of documents can be isolated easily and Mr. Blankenship can assist in directing counsel to relevant categories of documents. Opp'n at 9. Not surprisingly, defense counsel have attempted to categorize documents and are consulting with Mr. Blankenship regarding the document review. But the government is wrong about the extent to which the document review can be streamlined.

First, as explained in the memorandum supporting the motion to continue, the documents, as produced, are disorganized. Mem. at 8. The government's opposition does not take issue with that description, nor does it dispute the fact that important categories of documents, such as memoranda of witness interviews, are scattered throughout the production and bear different prefixes, making it difficult to locate and segregate them. *See id.*

Second, there are shortcomings in the electronic features of the document production that delay the document review. The government's opposition takes issue with the defense's footnoted description of certain problems in "de-duping" (identifying duplicates of documents) and date sorting of documents. *Id.* at n.4. The government points out that *some* documents have the hash tags that permit de-duping and *some* documents have date fields populated by metadata. That may be correct, but attempting to electronically de-dupe and date sort the entire document

production is a futile exercise because hundreds of thousands of documents cannot be analyzed and categorized using those electronic processes.[2] The deficiencies in the electronic characteristics of the documents, whether caused by the government or by the third parties that produced documents to the government, slow down the document review process.

Third, there is an important category of documents – those containing handwriting – that cannot be electronically identified, analyzed, or categorized by the OCR process used in electronic document reviews.[3] Mr. Blankenship frequently communicated with subordinates through handwritten notes. He wrote those notes on many different types of documents, including the "routine, daily Massey Energy Company reports" that the government claims should be "quickly reviewed" and "moved past" as "peripheral to the case." Opp'n at 9. In fact, the indictment contains numerous allegations regarding those handwritten communications by Mr. Blankenship, including many notes written on the "routine, daily Massey Company Reports" that the government asserts are "peripheral." *E.g.*, Indictment ¶¶ 52 ("handwritten note, written

---

[2] De-duping: More than half of the 651,000 documents do not contain any MD5 hash value, the identifier used to electronically de-dupe documents. As a result, none of the more than 300,000 records for which that field remains unpopulated can be eliminated as duplicates. Instead, each of these documents must be reviewed individually. There is a different problem with the approximately 300,000 documents for which the MD5 hash field is populated. We have found instances in which the image of a document does not contain all of the words and information when compared to another document that contains the same MD5hash value.

Date fields: More than 200,000 documents have no metadata populating the date field. There are also thousands of documents with inaccurate or conflicting dates – the metadata in the date field does not match other date information associated with the document. These deficiencies make the chronological sorting of documents unreliable and undermine confidence in the completeness of any other date-related grouping of documents.

[3] The optical character recognition (OCR) process uses an image of a page of text, compares the lines on the page with known typeface characters, and translates the information it recognizes into text. When the OCR is taken from a page that includes handwriting, the writing cannot be recognized when compared to typeface characters, and is not translated into text that is a match for the handwritten content. Therefore, because the handwriting is unrecognizable, it is not found when a text search is executed.

on a coal production report from one shift"); 53 ("handwritten note, written on a coal-production report"); 55 ("handwritten note on a copy of" a "regular report"); 57 ("handwritten note written on a request" to "spend approximately $750"); 60 ("handwritten message"), 61 (same); 62 (same); 63 (same); 69 ("handwritten note") 70 (same); 74 (same); 75 (same). Mr. Blankenship's handwritten notes are scattered throughout the document production, and defense counsel cannot electronically search for documents containing handwriting or electronically search for names or other words in handwriting.[4]

The approach taken by defense counsel to the document review is based on their years of experience in document-intensive white collar criminal cases and is supported by an expert affidavit regarding prevailing professional standards in such cases. Mem. at 5-9. Documents located to date in the review confirm the wisdom and necessity of their approach. Attached as Exhibits A, B, and C to this Reply are just three examples of documents found in the painstaking document review. Each reflects Mr. Blankenship's and Massey's commitment to safety and to the reduction in violations of MSHA safety regulations, important features of the defense to Counts One, Three, and Four of the indictment.

Exhibit A is an example of one of the handwritten notes that could not be identified electronically and could only be found through a document by document review. Just as the government relied on these types of notes as evidence in its case against Mr. Blankenship, so too must Mr. Blankenship's counsel be afforded the time to locate and use those that support Mr. Blankenship's defense. Other examples of documents supporting Mr. Blankenship's defense

---

[4] Quite apart from the fact that some of the "routine reports" contain handwritten notes, there are references to such routine reports throughout the indictment and, like all of the other documents in the production, are documents that the government has identified as ones that it may use at trial. They must be reviewed.

that counsel found in the document review are exhibits in support of Defense Motion No. 19, Motion to Enforce *Brady* Obligations.

Finally, the government does not dispute the fact that once the initial document review is completed, the core group of attorneys preparing the defense must then review and organize the documents for use in interviewing witnesses, preparing direct and cross-examinations, and selecting exhibits. Mem. at 8-9.

If Mr. Blankenship is forced to trial before his counsel have had time to review critical documents, documents such as those referenced above will be missed. There will be no time to perform other critical tasks, and Mr. Blankenship will be denied both a fair trial and the effective assistance of counsel.

### The Government Does Not Address or Dispute Mr. Blankenship's Other Arguments Supporting A Continuance

In addition, the government's opposition does not:

- dispute in any manner the defense's need to review several hundred memoranda of witness interviews, almost 500 transcripts of interviews conducted by MSHA, and grand jury transcripts and to conduct defense interviews of scores of potential witnesses;

- explain why Mr. Blankenship must be tried five months after indictment when Hughie Elbert Stover, facing much more discrete charges and one tenth of the documents produced in this case, was tried in this Court eight months after indictment;

- explain why Mr. Blankenship must be tried five months after indictment when the defendants in the Freedom Industries case, which involves one fifth of the documents

produced in this case, are scheduled to go to trial in this district ten months after the initial indictment and just received a seven month continuance;

- address in any fashion the scheduling of this trial on a date near the fifth anniversary of the tragic explosion at the Upper Big Branch mine; and

- respond at all to the defense's argument that trial preparation is impacted by the government's failure to meaningfully respond to numerous specific *Brady* requests.

Nor does the government identify any prejudice to it or to any other person that would result from a continuance.

## **CONCLUSION**

The government opposition to providing the defense a reasonable period of time to prepare for trial is tactical. It understands that its best chance of convicting Mr. Blankenship is to deny the defense to opportunity to review Rule 16 discovery. Indeed, there are documents and pieces of information scattered among the four million pages of discovery that are *Brady* material, because they are highly exculpatory, will impeach government witnesses, or otherwise will help Mr. Blankenship's defense. There are witnesses among the hundreds interviewed in the government's investigation, as well as individuals who the government elected not to interview, who will provide a narrative quite different from the one the government will tell at trial. Limiting defense counsel's time to prepare for trial increases the likelihood that documents, information, and witnesses will not be found or will not be used at trial effectively. None of those tactical objectives and none of the government's arguments in opposition to the motion for a continuance have anything to do with good cause, fairness, or the legal standards of 18 U.S.C. § 3161(h)(7). The court should grant Mr. Blankenship's motion to continue because he has shown good cause, because it is in the interest of justice to grant it, and because Mr. Blankenship

will be denied his constitutional rights to a fair trial and the effective assistance of counsel if his motion is denied.

Dated: March 3, 2015 Respectfully submitted,

   */s/ Blair G. Brown*
William W. Taylor, III
Blair G. Brown
Eric R. Delinsky
R. Miles Clark
Steven N. Herman
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036
202-778-1800 (phone)
202-822-8106 (fax)
wtaylor@zuckerman.com
bbrown@zuckerman.com
edelinsky@zuckerman.com
mclark@zuckerman.com
sherman@zuckerman.com

   */s/ James A. Walls*
James A. Walls (WVSB #5175)
SPILMAN THOMAS & BATTLE, PLLC
48 Donley Street, Suite 800
P.O. Box 615
Morgantown, WV 26501
304-291-7947 (phone)
304-291-7979 (fax)
jwalls@spilmanlaw.com

*Counsel for Donald L. Blankenship*

## **CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing has been electronically filed and service has been made by virtue of such electronic filing this 3rd day of March 2015 on:

R. Booth Goodwin, II
Steven R. Ruby
United States Attorney's Office
P.O. Box 1713
Charleston, WV 25326-1713

                                      */s/ Blair G. Brown*
                                      Blair G. Brown